IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JAMES R. FISHER and | ) | CASE NO. 04-80083-G3-7 |
| DARLENE FISHER, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| WILLIAM RANDALL and | ) | |
| ANDREA RANDALL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | ADV. NO. 04-8010 |
| | ) | |
| JAMES R. FISHER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The court has held a trial in the above captioned
adversary proceeding.  The following are the Findings of Fact and
Conclusions of Law of the court.  A separate conforming Judgment
will be entered.  To the extent any of the Findings of Fact are
considered Conclusions of Law, they are adopted as such.  To the
extent any of the Conclusions of Law are considered Findings of
Fact, they are adopted as such.

## Findings of Fact

James R. Fisher and Darlene Fisher ("Debtors") filed a
voluntary petition under Chapter 7 of the Bankruptcy Code on
January 20, 2004.

On January 30, 2004, the Clerk gave notice that the meeting of creditors in the instant Chapter 7 case would be held on February 25, 2004.  (Docket No. 6, Case No. 04-80083-G3-7).

On March 30, 2004, William Randall and Andrea Randall ("Plaintiffs") filed the complaint in the instant adversary proceeding.

In the complaint in the instant adversary proceeding, Plaintiffs pled for denial of the discharge of James Fisher ("Defendant"), pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(5). The complaint also requested that the court "grant such other and further relief to which William and Andrea Randall may show themselves entitled to receive."  The grounds on which Plaintiffs sought relief were that Defendant, who had contracted to build a home for Plaintiffs, falsely represented that he would pay subcontractors for the work on Plaintiffs' home, and failed to do so.  (Docket No. 1).

In the adversary cover sheet filed with the complaint in the instant adversary proceeding, Plaintiffs checked the box identifying the nature of suit as "454 To recover money or property."  Plaintiffs did not check either the box marked "424 To object to or to revoke a discharge 11 U.S.C. § 727," or "426 To determine the dischargeability of a debt 11 U.S.C. § 523." (Docket No. 1).

2

Defendant filed an answer, denying the material allegations of the complaint.  (Docket No. 4).

In their pretrial statement (which was filed by Plaintiffs' substitute counsel), Plaintiffs stated their contentions:  "Plaintiffs contend that defendants are not entitled to a discharge due to the fact that the conduct of J.R. Fisher contravenes section 727 of the bankruptcy code. Plaintiffs further contend that defendants breached the contract and rely on its pleadings now or as amended for further contentions."  (Docket No. 21).

In his pretrial statement, Defendant stated his understanding of the adversary proceeding:  "This dispute arises out of the plaintiffs' challenge to the dischargeability of the debt which defendants listed on their schedules."  (Docket No. 32).

No pretrial order was entered with respect to the instant adversary proceeding.

On September 3, 2002, Defendant James R. Fisher, d/b/a JR Fisher Construction Company contracted to build for Plaintiffs a single story house with a single story garage ready for a future second story room.  Plaintiffs agreed to pay $300,000 to Fisher, including a builder's fee of $12,000.  The contract additionally included an itemized list of building services and allowances for purchase of selected materials for the home.

(Defendant's Exhibit 1).

On the same date on which they executed the contract, Plaintiffs and Defendant executed an agreement calling for changes in the building plan of the house.  The agreement called for, inter alia, enlargement of the master bedroom, construction of a room above the garage, and a relocation of the garage to create a porte cochere between the garage and the house. (Defendant's Exhibit 1).[1]

William Randall testified that the agreement to change the building plan was reached before Plaintiffs and Defendant executed both the documents identified as "Contract to Build House" and "Contract Adjustments to the Randall's Home."  He testified that he never signed any document adjusting the price of the home.

Plaintiffs obtained a construction loan, to finance the purchase of the home, from Texas First Bank (the "Bank").  The Bank loaned $292,500, of which $34,635.46 was to be applied to purchase of the lot on which the home was to be built. (Defendant's Exhibit 6).

Defendant testified that he received draws against the construction loan from the Bank, totaling $244,538.89, and received $47,213.93 directly from Plaintiffs, for a total of

---

[1]Defendant's Exhibit 1 includes two signed agreements, both dated September 3, 2002.  The first is titled "Contract to Build House."  The second is titled "Contract Adjustments to the Randall's Home."

4

$291,752.82.  He testified that he used these funds to pay subcontractors who worked on Plaintiffs' home.  He testified that there were insufficient funds to pay all the subcontractors.  He testified that, while the construction of Plaintiffs' home proceeded, he continued to make payments on approximately 25 credit cards, and additionally was able to make the payments on his home mortgage, and pay his personal bills as they became due.  He testified that he did not make these payments from the proceeds of Plaintiffs' note.  This testimony was not credible.

Plaintiffs closed on their purchase of the home in approximately November, 2003.  Andrea Randall testified that, before closing, some of the subcontractors began calling her, requesting payment for work performed on the property.  She testified that, in order to satisfy liens of subcontractors for work performed on the property, Plaintiffs were required to pay at closing $10,440 to a lumber vendor, and $5,100 to a cabinet maker.  She testified that there remain outstanding liens in favor of several other subcontractors, including $3,000 for a brick subcontractor, $1,079 for an insulation subcontractor, $6,000 for a roofing subcontractor, and $4,000 for an air conditioning subcontractor.  She testified that, additionally, Plaintiffs were required to make repairs to the home, in order to complete the construction.  She testified that Plaintiffs spent $15,028.08 on these repairs.  William Randall testified as to an

additional $605.00 in repairs necessary to complete the construction of the home.

Conclusions of Law

Rule 15(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7015, provides in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Rule 15(b), Fed. R. Civ. P.

The court has discretion to enlarge the pleadings sua sponte.  In re Lett, 238 B.R. 167 (Bankr. W.D. Mo. 1999).

Implied consent depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.  Implied consent is not to be inferred lightly; the court must consider the issue of due notice.  Jimenez v. Tuna Vessel "Granada", 652 F.2d 415 (5th Cir. 1981).

In the instant case, the question of dischargeability under Section 523 of the Bankruptcy Code was tried by consent of the parties.  At a minimum, this consent may be implied based on the evidence as to Defendant's having obtained the funds from the construction loan by false pretenses.  In addition, the court

6

finds that Defendant's pretrial statement contains an express
recognition that dischargeability of the particular debt was to
be tried before trial.  Likewise, the pretrial statement
indicates that Defendant had due notice of a cause of action
under Section 523 of the Bankruptcy Code.  The court concludes
that the pleadings may be enlarged in the instant adversary
proceeding to determine dischargeability pursuant to Section 523
of the Bankruptcy Code.

Plaintiffs bear the burden of proof, by a preponderance
of the evidence, with respect to denial of discharge under
Section 727 of the Bankruptcy Code.  Matter of Beauboeuf, 966
F.2d 174 (5th Cir. 1992).  Plaintiffs bear the burden of proof,
by a preponderance of the evidence, with respect to determination
of dischargeability under Section 523 of the Bankruptcy Code.
Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755
(1991).

Section 727(a)(2) of the Bankruptcy Code provides for a
denial of discharge if:

> (2) the debtor, with intent to hinder, delay, or
> defraud a creditor or an officer of the estate charged
> with custody of property under this title, has
> transferred, removed, destroyed, mutilated or
> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated or concealed--
>
> > (A) property of the debtor, within one year before
> > the date of filing of the petition; or
> >
> > (B) property of the estate, after the date of
> > filing of the petition.

7

11 U.S.C. § 727(a)(2).

In the instant case, nothing in the pleadings or proof demonstrates the transfer, removal, destruction, mutilation, or concealment of property of the debtor.  The court concludes that Plaintiffs have failed to meet their burden of proof with respect to Section 727(a)(2).

Section 727(a)(5) provides for a denial of discharge if:  "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).

In the instant case, Defendant's uncontroverted testimony is that he utilized the funds received on draws from the Bank to make payments to subcontractors.  Although the court finds not credible his testimony that he did not use the funds received for payment on his personal credit cards, the court finds sufficient, for purposes of Section 727(a)(5), Defendant's explanation of the disposition of the funds he received on draws from the Bank.

Section 523(a)(2)(A) excepts from discharge a debt for money, to the extent obtained by, false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

Actual fraud is a knowing false representation, with an intent to deceive a creditor, who relies on the representation, and thus sustains a loss.  <u>Matter of Mercer</u>, 246 F.3d 391 (5th Cir. 2001); <u>citing</u> <u>RecoverEdge L.P. v. Pentecost</u>, 44 F.3d 1284 (5th Cir. 1995).

Section 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.  The Supreme Court has determined that "willful," as used in Section 523(a)(6), "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

For a debt to be nondischargeable under Section 523(a)(6), a debtor must have acted with either an objective substantial certainty of harm or a subjective motive to cause harm.  <u>In re Miller</u>, 156 F.2d 598 (5th Cir. 1998).

With respect to the instant case, Defendant represented to Plaintiffs that he would use the funds he received on draws from the Bank for payment of subcontractors.  Plaintiffs relied on that representation in obtaining the construction loan from the Bank, and in closing on their purchase of the home.  As a result of Plaintiffs' reliance, they sustained the losses of having to pay subcontractors who did or could have obtained a

9

lien on their home.  In addition, Defendant's hiring of
subcontractors to do the work contemplated by the contract, and
then failing to pay them, creates an objective substantial
certainty of harm, as a result of the ability of the
subcontractors to obtain liens impairing Plaintiffs' home.  The
measure of these losses is $29,619.  The court concludes that
Defendant's debt to Plaintiffs, in the amount of $29,619, is
excepted from discharge, pursuant to Section 523(a)(2)(A) and/or
Section 523(a)(6) of the Bankruptcy Code.

Although Plaintiffs incurred additional expenses for
the repair (or completion of construction) of their home, those
expenses do not flow from Defendant's fraudulent representation
that he would pay the subcontractors who worked on the home.
Instead, those expenses flow from Defendant's breach of the
construction contract.  The court concludes that these expenses
are not excepted from discharge.

Based on the foregoing, a separate conforming Judgment
will be entered.

Signed at Houston, Texas on March 17, 2006.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

10